MARION F. EDWARDS, Chief Judge.
 

 | ;>Plaintiff/appellant, Karen Pleasure (Mrs. Pleasure), appeals a judgment of the Twenty-Fourth Judicial District Court
 
 *164
 
 granting an Exception of Prematurity filed by defendant/appellee, Jefferson Parish Hospital District No. 1 d/b/a West Jefferson Medical Center (West Jefferson).
 

 The lawsuit in question arises from the death of Mrs. Pleasure’s spouse, Keith Pleasure. On February 8, 2008, Mrs. Pleasure discovered her husband unconscious on the floor. She called emergency service workers, who worked unsuccessfully on her husband before transporting him to West Jefferson. Medical staff there resuscitated him and obtained a pulse, and he was placed on a ventilator. According to hospital records, at 10:50 a.m., Mrs. Pleasure signed a directive requesting that her husband be allowed to die naturally with only the administration of medication, or performance of any medical procedure necessary to provide comfort care. Dr. Walter Truax determined at 12:40 p.m. that it was his impression that Mr. Pleasure had suffered brain death.
 

 |sMr. Pleasure was pronounced dead that afternoon at 1:30 p.m..
 

 In her petition, Mrs. Pleasure alleges that she requested all life support be removed, but West Jefferson did not do so until the hospital conducted tests for organ viability. She contends that she suffered unnecessary mental and emotional pain and suffering and unnecessary medical treatment, tests, and expenses “just to keep the Plaintiffs spouse’s organs viable for organ donation.”
 

 Mrs. Pleasure filed a separate action against the Louisiana Organ Procurement Agency (LOPA). This suit was eventually consolidated with the suit against West Jefferson.
 

 West Jefferson filed an Exception of Prematurity, averring that it is a qualified healthcare provider under La. R.S. 40:1299.47, that the claim before the court concerned a “medical service” that is covered under the act, and that Mrs. Pleasure failed to request a Medical Review Panel in accordance with the statute.
 

 The trial court heard argument on the matter on December 14, 2009. Mrs. Pleasure, who had filed the initial lawsuits in proper person, was represented by counsel. Mrs. Pleasure’s attorney stated that he had attempted to amend the petition and state a cause of action for improper harvesting of organs, but the court stated that no amended petitions had been filed. The court granted the Exception on December 15, 2009, without prejudice. Also on that date, Mrs. Pleasure filed for and was granted leave of court to file an amending petition, which urged that West Jefferson was negligent in failing to obtain proper consent to release Mr. Pleasure’s body for organ removal and in failing to timely remove him from life support.
 

 The present appeal concerns only the lawsuit against West Jefferson. Initially, we note that only the first page of the petition filed against West Jefferson appears in that appellate record. However, the record of the consolidated suit 14against LOPA contains what appears, considering the grammatical sequence, the facts alleged, and paragraph numbering, to be the intended second page of the West Jefferson suit. On appeal, appellate counsel acknowledges that Mrs. Pleasure’s intent in filing
 
 both
 
 suits was a complaint that LOPA obtained Mr. Pleasure’s corneas without her written or verbal consent.
 

 Mrs. Pleasure avers that Mr. Pleasure was brain dead and, thus, with regard to West Jefferson, could not be considered a patient under the malpractice statutes. According to Mrs. Pleasure, there was no health care involved because Mr. Pleasure was dead.
 

 West Jefferson argues, as it did before the trial court, that the claim was indeed a “medical service” covered under La. R.S.
 
 *165
 
 40:1299.41 as interpreted and defined by other statutes that address organ donation.
 

 La. C.C. art. 2322.1, in relevant part, states:
 

 A. The screening, procurement, processing, distribution, transfusion, or medical use of human blood and blood components of any kind and the transplantation or medical use of any human organ, human tissue, or approved animal tissue by physicians, dentists, hospitals, hospital blood banks, and nonprofit community blood banks is declared to be,
 
 for all purposes whatsoever, the rendition of a medical service
 
 by each and every physician, dentist, hospital, hospital blood bank, and nonprofit community blood bank participating therein, and shall not be construed to be and is declared not to be a sale. Strict liability and warranties of any kind without negligence shall not be applicable to the aforementioned who provide these medical services.
 

 [[Image here]]
 

 D. As used in this Article:
 

 (1) “Healthcare provider” includes all individuals and entities listed in R.S. 9:2797, this Article, R.S. 40:1299.39 and R.S. 40:1299.41 whether or not enrolled with the Patient’s Compensation Fund.
 

 (2) “The use of blood or tissue” means the screening, procurement, processing, distribution, transfusion, or any medical use of human blood, blood products, and blood components of any kind, and the transplantation or medical use of any human organ, human or |,^approved animal tissue, and tissue products or tissue components by any healthcare provider.
 

 (Emphasis supplied.)
 
 See also,
 
 La. R.S. 9:2797.
 

 Under La. R.S. 40:1299.41(A)(15), a “patient” is a natural person who receives or should have received health care from a licensed health care provider, under contract, expressed or implied. “Health care” is any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components. La. R.S. 40:1299.41(A)(9). “ ‘Malpractice’ means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient_” La. R.S. 40:1299.41(A)(13). According to that section, malpractice includes legal responsibility arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines. Tissue banks, which are defined as any independent nonprofit facility procuring and processing human organs or tissues for transplantation, medical education, research, or therapy, are included as health care providers under the statute.
 

 La. R.S. 9:111(A) gives the legal definition of death as follows:
 

 A person will be considered dead if in the announced opinion of a physician, duly licensed in the state of Louisiana based on ordinary standards of approved medical practice, the person has experienced an irreversible cessation of spontaneous respiratory and circulatory functions. In the event that artificial means of support preclude a determination that these functions have ceased, a person will be considered dead if in the announced opinion of a physician, duly licensed in the state of Louisiana based
 
 *166
 
 upon ordinary standards of approved medical practice, the person has experienced an irreversible total cessation of brain function. Death will have occurred at the time |fiwhen the relevant functions ceased. In any case when organs are to be used in a transplant, then an additional physician, duly licensed in the state of Louisiana, not a member of the transplant team, must make the pronouncement of death.
 

 In the present case, Mr. Pleasure was clearly a patient at West Jefferson. He was treated in the emergency room, revived, intubated, and diagnosed as being in a coma. Mrs. Pleasure argues that when Dr. Truax opined that Mr. Pleasure had no pulse and was brain dead, and although his heart was still beating, he was no longer a “patient,” according to La. R.S. 9:111, to be covered under the Malpractice Act. However, whether or not Dr. Truax’s medical notes at 12:40 p.m. meet the legal definition of death as defined in the statute prior to his being pronounced dead by another physician at 1:30 p.m. does not determine the nature of the action before us. (We note that La. R.S. 9:111 qualifies the legal definition of death for purposes of transplant as requiring a “pronouncement of death” by a physician who is not a member of the transplant team.)
 

 Considering the above-cited statutes in connection with the facts at hand, we find that the legislature clearly intended to include the present situation actions as medical or professional services to be covered by the Medical Malpractice Act. La. C.C. art. 2322.1 and La. R.S. 9:2797 unambiguously state that the process of transplantation of human organs, including screening and procurement by physicians, hospitals, etc. are, for
 
 all purposes whatsoever,
 
 considered medical service. In these statutes, the legislature has twice defined the processes of blood transfusion and human organ transplant squarely as “medical services.” Under La. 40:1299.1, tissue banks are included as qualified health care providers. “Malpractice” includes any unintentional tort or any breach of contract based on professional services rendered by a health care provider, including acts, omissions, and/or defects involving transplants.
 

 17Under the facts of this case, the trial court correctly granted the Exception of Prematurity relative to West Jefferson, without prejudice. The judgment is affirmed.
 

 AFFIRMED.